UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Patricia Morse,

Case No. 17-61271
Chapter 7

Debtor.

*Appearances:*

*Randy J. Schaal, Esq.*
*Chapter 7 Trustee*
312 Broad Street
Oneida, New York 13421

*David G. Goldbas, Esq.*
*Attorney for Debtor*
Adirondack Bank Building
185 Genesee Street, Suite 905
Utica, New York 13501

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

*I. Introduction*

Before the Court is the objection filed by chapter 7 trustee, Randy J. Schaal, Esq.
("Trustee"), on January 5, 2018 (the "Objection," ECF No. 44), to the homestead exemption

claimed by debtor, Patricia Morse ("Debtor"), in relation to her residence located at 129 Van Tassel

Lane, Rome, New York (the "Property"). Under New York Civil Practice Law and Rules ("NY

CPLR") § 5206(a), made applicable here by virtue of 11 U.S.C. § 522(b)(3), Debtor claimed an

exemption for 100% of the Property's fair market value, which she asserts is $61,000.00, well

below the applicable statutory limit of $82,775.00 for Oneida County where the Property is

located.[1] Trustee's Objection is based on his competing assertion that the fair market value of the

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C.
§§ 101–1532 (the "Bankruptcy Code").

Property is $210,000.00, leaving significant non-exempt equity for him to administer on behalf of

the bankruptcy estate. On January 30, 2018, Debtor filed a Reply to the Objection (the "Reply,"

ECF No. 58), wherein she contends, *inter alia*, that her fair market value is supported by numerous

building code violations and a state court judgment entered against the Property's residential

builder, architect, and co-defendants.

The Court first heard oral argument in this matter on its regular motion term calendar on

February 8, 2018. At that time, the Court determined that an evidentiary hearing would be required

to resolve the Objection. On February 13, 2018, the Court issued a Scheduling Order setting the

evidentiary hearing for April 16, 2018. (ECF No. 61.) At the conclusion of the same, the Court

instructed the parties to submit post-hearing memoranda of law in further support their respective

positions by May 1, 2018. Trustee filed his Memorandum of Law on April 25, 2018 (ECF No. 78),

and Debtor filed her Memorandum of Law on May 1, 2016 (ECF No. 86). On the latter date, the

Court took the matter under advisement.

Based upon the evidence presented and the submissions of counsel, the Court now makes

the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure

52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.[2] For the reasons set

forth herein, the Court overrules the Objection.

II. *Jurisdiction*

The Court has jurisdiction over the parties and subject of this contested matter pursuant to

28 U.S.C. §§ 157 and 1334, and declares it to be a core proceeding under 28 U.S.C. § 157(b)(2)(A)

and (B).

---

[2] Unless otherwise indicated, all rule references are to the Federal Rules of Bankruptcy Procedure.

*III. Facts*

The factual background is drawn from the record established at the evidentiary hearing. Where necessary, the Court has also taken judicial notice of its docket as permitted by Federal Rule of Evidence 201. Fed. R. Evid. 201.

On October 4, 2017, Debtor filed a voluntary chapter 7 petition and Trustee was appointed to administer Debtor's bankruptcy estate. On Schedule C, titled "The Property You Claim as Exempt," Debtor exempted what she believes to be all of the exempt equity in the Property based upon her submitted valuation.[3] On Schedule D, titled "Creditors Who Hold Claims Secured by Property," Debtor did not list any secured claims collateralized by the Property. Trustee then timely filed his Objection.[4] While Trustee does not object to Debtor's entitlement to a homestead exemption under NY CPLR § 5206(a), he does object to Debtor's valuation of the Property and therefore her ability to exempt the Property in full from administration as property of the bankruptcy estate.

At the April 16, 2018 evidentiary hearing to determine the value of the Property, Trustee presented two expert witnesses, Ericson E. Stropp ("Stropp") and Allan Patrick James ("James"), both of whom are New York State certified real estate appraisers. Debtor also presented two expert witnesses, Albert T. Zito ("Zito") and Frank Donato ("Donato"). Zito is a real estate broker licensed in New York, and Donato is a New York State certified real estate appraiser. The Court

---

[3] On November 11, 2017, Debtor amended her Schedule C. (ECF No. 32.) However, Debtor did not amend her claimed homestead exemption.

[4] Pursuant to Rule 4003(b)(1), "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). Debtor's § 341 meeting was closed on December 14, 2017, and Debtor did not amend her schedules beyond that date. Accordingly, the deadline to object to Debtor's exemptions was January 13, 2018. As noted above, Trustee's Objection was filed on January 5, 2018, and therefore timely under Rule 4003(b)(1).

will separately address the testimonial and documentary evidence presented during each witness's turn on the stand.

*Stropp's Testimony and Appraisal*

Stropp is a New York State certified general appraiser with 31 years' experience. He is currently the President of Stropp Appraisal Real Estate & Consulting. He was formerly retained by a creditor of Debtor and prepared an appraisal for the Property in conformance with the Uniform Standards of Professional Appraisal Practice (the "USPAP"), wherein he attributed a fair market value to the Property of $210,000.00 as of January 4, 2018 (the "Stropp Appraisal," Trustee's Ex. A). Trustee called him as a witness in this contested matter and Stropp testified that he appraised the Property using the comparable sales approach.

Stropp explained that he first searched public records pertaining to the Property to familiarize himself with the zoning area, employment rates, population, and property tax assessment. Stropp then contacted Debtor to arrange for a physical inspection of the Property. Stropp testified that this site visit included an examination of both the interior and exterior of Debtor's residence, and he recorded various characteristics of the Property, including how the residence was situated on the lot and how the Property conformed to the surrounding structures in the neighborhood. Although the official mailing address for the property is Rome, New York, Stropp testified that the Property is situated in the Raven Rock Estates Development ("Raven Rock Development") in the town of Lee, New York. The Raven Rock Development is comprised of thirty-four residences in seventeen duplexes.

Stropp also testified that, during his site visit, Debtor informed him that her home had several major structural building defects, including a defective firewall. She further informed him that the Property was one of seven properties that were the subject of a state court lawsuit by

certain homeowners regarding the Raven Rock Development against the developer and other co-defendants for negligence (the "State Court Lawsuit"). Debtor advised Stropp that the State Court Lawsuit included a claim related to the failure to construct a firewall, which would cost the homeowner approximately $167,000.00 to cure according to a public adjuster's report prepared by Basloe, Levin, and Cuccaro/Adjusters International in connection with the State Court Lawsuit (the "Basloe Report," Debtor's Ex. 1).[5] It is undisputed that the State Court Lawsuit resulted in negative publicity regarding the Raven Rock Development and a post-jury trial judgment in favor of Debtor in the amount of $100,000.00 against the developer on the cause of action for negligent construction.[6]

Stropp included this information under the Building Description portion of the Stropp Appraisal, which reads: "According to the owner and information provided to the appraiser, some building deficiencies were noted such as a septic system that is below standard capacity (1,000-gal vs. 1,250-gal), inadequate firewall construction, sub-par windows, etc. However, the above issues are considered legal non-conforming uses." (Stropp Appraisal at 21.) When questioned about this statement and the building deficiencies, Stropp repeatedly testified that these issues were zoning rather than code violations.

---

[5] Debtor, through counsel, introduced and marked the Basloe Report as Debtor's Exhibit 1 during counsel's cross-examination of Stropp. Counsel then moved for its admission during his direct examination of Zito. Trustee did not object to its admission but he did object to Debtor and/or the Court's reliance on the same on the ground of hearsay. Following its review of the record, the Court interprets the crux of Trustee's argument to be that Zito's expert testimony cannot be utilized as a conduit to move into evidence otherwise inadmissible hearsay testimony. Debtor responded to Trustee's objection by arguing that the Basloe Report is admissible under Federal Rule of Evidence 702. Federal Rule of Evidence 703, however, is the rule that governs the sources upon which experts may ground their opinions. 1 Weinstein's Evidence Manual § 13.03[1]. Additional discussion and resolution of Trustee's objection will necessarily follow in the Court's analysis of Zito's expert opinion and appraisal. *See* Discussion *infra* p. 14.

[6] It is undisputed that the judgment has been appealed. The Court's docket reflects that certain defendants in the State Court Lawsuit sought and obtained relief from the automatic stay imposed by § 362(a)(1) in order to prosecute the appeal. Their motion for relief pursuant to § 362(d)(1) was filed on July 10, 2018 (ECF No. 94), and an order granting stay relief was entered on August 7, 2018 (ECF No. 105).

The following chart lists the comparable properties utilized by Stropp in reaching his

opinion, all of which are located in the town of Lee:

| Property Address | Value |
|---|---|
| 8664 Willow | $133,900.00 |
| 107 Van Tassel Lane | $187,700.00 |
| 104 Van Tassel Lane | $199,000.00 |
| 122 Van Tassel Lane | $212,500.00 |
| 150 Van Tassel Lane | $220,000.00 |
| 148 Van Tassel Lane | $265,000.00 |

(Stropp Appraisal at 24.) As Stropp testified and as stated in the Stropp Appraisal, the six

comparable properties he utilized to reach his fair market value for the Property included "these

issues or similar ones," which assumption he based on the duplexes having been built by the same

developer. Five of the six comparable properties he utilized are located in the Raven Rock

Development, and all of the comparable properties were final, closed sales. His comparable

property values ranged from $187,460.00 to $265,000.00, rendering a mean average of

$211,943.00. He made a negative adjustment of 40% for the first comparable property due to its

inferior age and condition in comparison to the Property. (Stropp Appraisal at 25.) Although

Stropp testified that each comparable property had similar problems as the Property and he

accounted for the same, none of his comparable properties were included in the State Court

Lawsuit.

*James's Testimony and Appraisal*

James is a New York State certified residential appraiser and broker with approximately

30 years' experience. He was retained by Trustee in conjunction with this matter and prepared an

appraisal for the Property in conformance with the USPAP, wherein he attributed a fair market

value to the Property of $212,500.00 as of April 2, 2018 (the "James Appraisal," Trustee's Ex. B).

He too testified that he appraised the Property using the comparable sales approach.

James testified that he first completed a physical inspection of both the interior and exterior of the Property, and then he researched comparable properties that had recently sold, pending sales, and competing listings. James stated that he was also informed by Debtor during his visit that the Property was included in the State Court Lawsuit. Debtor advised him that the firewall repair would cost approximately $167,000.00 to cure according to the Basloe Report. Despite being provided this information, James did not reduce the value of the Property by the alleged amount to cure. Instead, James testified that all of the comparable properties he utilized had the same issues.

The following chart lists the comparable properties, including four sold properties, one competing property listing under contract, and one active property listing utilized by James in reaching his opinion, all of which are located in the town of Lee and, more specifically, in the Raven Rock Development:

| Property Address | Value |
|---|---|
| 122 Van Tassel Lane | $212,500.00 |
| 150 Van Tassel Lane | $220,000.00 |
| 107 Van Tassel Lane | $210,000.00 |
| 154 Van Tassel Lane | $200,000.00 |
| 109 Van Tassel Lane | $235,000.00 – Sale Pending |
| 130 Van Tassel Lane | $229,500.00 – Listed and on the market for 241 days as of the date of the James Appraisal |

(James Appraisal at 2–5.) James did make price adjustments to the comparable sales based upon certain improvements and physical features. With respect to the construction defects, however, he specifically noted that "[b]ased upon the competing listings, sale pending properties and the four properties that have conveyed within the past 28 months, whether the purchasers paid cash or whether they went to a bank and ascertained a conventional loan, they all had the same issues as that of the subject property." (James Appraisal Addendum at 5.) Notably, the fifth comparable

property at 109 Van Tassel Lane, which was under contract but had not closed, was included in the State Court Lawsuit.

*Zito's Testimony and Appraisal*

Zito is a New York State licensed residential real estate broker with 33 years' experience. Although he has taken all of the requisite training and courses to become a New York State certified appraiser, he has not yet taken the exam. Zito was retained by Debtor in conjunction with this matter and prepared an appraisal of the Property in conformance with the USPAP, wherein he attributed a fair market value to the Property of $61,000.00 as of October 6, 2017 (the "Zito Appraisal," Debtor's Ex. 6). Zito testified that he conducted due diligence beyond that required of a broker, and he confirmed that he utilized the USPAP guidelines and standards to justify the Zito Appraisal. He also appraised the Property using the comparable sales approach.

The following chart lists the comparable properties utilized by Zito in reaching his opinion, all of which were final, closed sales:

| Property Address | Value |
|---|---|
| 154 Van Tassel Lane | $50,000.00 |
| 148 Van Tassel Lane | $75,000.00 |
| 104 Van Tassel Lane | $49,000.00 |

(Zito Appraisal at 15–17.) Although none of the comparable properties were included in the State Court Lawsuit, Zito testified that he began with the same sale price as either Stropp or James but he then made downward adjustments to each comparable property in the amount of $150,000.00, to account for the "firewall deficiency." Zito indicated that the multiple listing service listings for the comparable properties did not disclose a firewall or other structural deficiencies, but he assumed that the comparable properties were similar because they were built by the same developer and also located in the Raven Rock Development.

Although Zito testified that he was provided with and examined a copy of the Basloe Report, he stated that it did not form the basis for his expert opinion. Rather, Zito testified that he arrived at his fair market value of $61,000.00 after examining comparable properties, observing a substantial crack in the Property's foundation that started in the basement and ended in the attic space, consulting construction experts about the known structural deficiencies with the Property, and interviewing Basloe about his projected cost to cure the firewall defect. He indicated that he believed the Basloe Report's cost to cure was too high, and after consulting with other construction experts to form his opinion, he discounted the Basloe Report's cost to cure to arrive at what be believed to be a realistic, actual retail cost for the repair or replacement of structural deficiencies and items.

Zito further testified that he believed his adjustments and overall fair market value were supported by known structural defects, which could render the Property unfinanceable through traditional bank financing. On cross-examination, Zito indicated that he would have attributed a value of $200,000.00 to $205,000.00 to the Property but for the structural issues, and he continued to defend his valuation based upon his belief that $61,000.00 would be the highest and best price the market would support based on the physical characteristics of the Property.

*Donato's Testimony*

Donato is a New York State certified general appraiser with 18 years' experience. He served as a rebuttal expert witness for the primary purpose of testifying as to how comparable properties should be selected and how adjustments should be made under the USPAP. He testified that in accordance with the USPAP, an appraiser should select other properties that are substitutes for the subject property. In this case, Donato indicated two methods for rendering a reliable appraisal. First, an appraiser could rely upon a final sale of a comparable property that had the

same documented defects as the Property, provided that they were in fact disclosed to the buyer during the sale transaction. Second, if a comparable property of this sort did not exist, an appraiser could reconcile the value of the Property with other comparable properties by subtracting the cost to cure the Property's known deficiencies from the comparable properties' values.

## IV. Arguments

Given that the sole issue in this matter is the proper valuation of the Property, the parties' arguments are simple and straightforward. Trustee contends the fair market value of the Property is $210,000.00, whereas Debtor contends the fair market value of the Property is $61,000.00. All experts have years of experience and based their respective opinions and appraisals on the comparable sales method. In fact, as indicated below, they used many of the same comparable properties and, prior to making adjustments to their respective comparable properties, their market values were within 4% of one another. Trustee contends that his witnesses and appraisals are more reliable than Debtor's witnesses or appraisal. Debtor submits that the opposite is true and, as such, contends Trustee has failed to meet his burden.

## V. Discussion

The record exhibits a wide divergence of opinion between Trustee and Debtor as to the fair market value of the Property. To be exact, the parties' opinions differ by $149,000.00. As stated by numerous other courts, "valuation is not an exact science," *In re Centennial Park, LLC*, Chapter 11 Case No. 11-22026, 2011 Bankr. LEXIS 4375, at *7 n.8 (Bankr. D. Kan. Nov. 14, 2011) (citing *In re Sandy Ridge Devel. Corp.*, 881 F.2d 1346, 1354 (5th Cir. 1989)), and the Court must be mindful of the purpose for which valuation is sought. *See* 11 U.S.C. § 506(a)(1). The Court is tasked here with the notoriously difficult job of selecting a winner in the quintessential battle of the experts for purposes of determining whether Trustee may marshal Debtor's primary asset. The

Court's determination of the proper valuation turns on the credibility of the experts and the weight given to their respective appraisals.[7]

Preliminarily, the Court notes that all experts have significant experience in the real estate field. As certified general appraisers, Stropp and Donato each have more than 3,000 hours of experience over a period of not less than 30 months.[8] As a certified residential appraiser, James has more than 2,500 hours of experience over a period of not less than 24 months. As a licensed real estate broker, Zito has at least two years of experience as a licensed real estate salesperson and at least three years of experience in the general real estate field, or a combination of both, and he has met the minimum requirements for the experience type, as well as having satisfactorily completed both the qualifying real estate salesperson course of 75 hours and an additional 45-hour real estate broker course as approved by the New York Department of State.[9] All witnesses testified that their individual experience greatly exceeds New York State's minimum requirements for their respective certifications and licenses. Each is therefore indisputably qualified to offer expert testimony in this matter.

Before reaching threshold credibility determinations, given the selection of experts by the parties in this matter, the Court must address in the first instance whether the opinion of a licensed real estate broker should be afforded the same evidentiary weight as that rendered by a licensed and certified real estate appraiser. Like its sister court, this Court recognizes that,

---

[7] Preliminarily, the Court must address the procedural challenge raised by Debtor to the admission of Stropp and James's cumulative expert testimony. Notably, Debtor does not challenge the qualification of either of Trustee's witnesses as experts under Federal Rule of Evidence 702. Rather, Debtor contends that their respective opinions and testimony should be disallowed because they are not the product of reliable principles and methods of residential appraisal and they have failed to apply these principles and methods to the facts of this case. (Debtor's Mem. at 3–4.) The Court overrules Debtor's objection. As the trier of fact, the Court will necessarily assess credibility and weigh each witness's testimony in the context of the established record.

[8] The categories of licensure and certification for appraisers are set forth on the New York State Department of State's website under the Division of Licensing Services at https://www.dos.ny.gov/licensing/re_appraiser/re_appraiser.html.

[9] The licensure requirements for brokers are set forth on the New York State Department of State's website under the Division of Licensing Services at https://www.dos.ny.gov/licensing/re_salesperson/re_sales_broker_faq.html#2.

an assessment of the fair market value of a real estate parcel by an appraiser carries greater weight than that of a real estate broker who does not have the same specialized training. While a broker relies upon his sales experience, a broker is not instructed in his or her valuation opinion by the industry standards and uniform guidelines to which a competent appraiser must adhere in preparing an appraisal and rendering an opinion of value.

*In re Pichardo*, Chapter 13 Case No. 12-13015, 2013 Bankr. LEXIS 1325, at *11 (Bankr. D. R.I. Apr. 3, 2013). However, the Court should not categorically reject a broker's opinion of value or bar a broker from testifying at a valuation hearing. *Id.* (citing *Donaway v. Tucker (In re Donoway)*, 139 B.R. 156, 158 (Bankr. D. Md. 1992)). "As an evidentiary matter, . . . it comes down to the weight to assign to such testimony and opinion." *Id.* at *12 (citing *In re Smith*, 267 B.R. 568, 575 (Bankr. S.D. Ohio 2001)). If, for example, a licensed appraiser's appraisal contains material irregularities or inaccuracies, it should be afforded less weight than that of a broker. *Id.* at *13.

Because the Trustee as the objecting party has the burden of proving that the claimed exemption is improper, Fed. R. Bankr. P. 4003(c), the Court focuses first on the Stropp Appraisal. At least two assumptions and two limiting conditions set forth therein cause the Court pause. Specifically, the Stropp Appraisal states:

It is assumed that there is full compliance with all federal, state, and local environmental regulations and laws unless non-compliance is stated, defined, and considered in the appraisal report. A comprehensive examination of laws and regulations affecting the subject property was not performed for this appraisal by the appraiser.
. . .
This appraisal should not be considered a report on the physical items that are a party of this property. Although the appraisal may contain information about the physical items being appraised (including their adequacy and/or condition), it should be clearly understood that this information is only to be used as a general guide for property valuation and not as a complete or detailed physical report. The appraisers are not construction, engineering, environmental, or legal experts, and any statement given on these matters in this report should be considered in that context.
. . .

> Wells and septic systems, if any, are assumed to be in good working condition and of sufficient size and capacity for the stated highest and best use unless otherwise stated.
>
> . . .
>
> The value estimated is predicated on the assumption that there is no such condition on or in the property or in such proximity thereto that would cause a loss in value unless otherwise stated. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in the field, if certainty is desired.

(Stropp Appraisal at 10–11.) The Court cannot reconcile these assumptions and limiting conditions with Stropp's testimony and ultimate fair market value. Because none of the comparable properties were part of the State Court Lawsuit and no other proof was presented to verify that they in fact had the same deficiencies, they do not provide reliable comparisons. Clearly, there should have been some concrete downward adjustments applied to Stropp's ultimate opinion of the fair market value of the Property. Although Stropp claims he accounted for "problems" with the Property, the Court finds that his opinion of fair market value lacks credibility.[10]

The Court makes the same observations and findings with respect to James's testimony and opinion of market value, with one notable caveat. James's comparable properties included at least one property with characteristics that more closely aligned with those of the Property. That comparable property is 109 Van Tassel Lane. However, the sale was pending and had not yet closed at the time of the appraisal. The Court finds that closed sales are more reliable indicia of the fair market value of a property than a proposed sale that has not yet closed.

Of the experts, the Court finds Zito to be the most reliable. Unlike Stropp and James, both of whom testified that a professional could use a pending sale to establish fair market value in an appraisal, Zito testified that he would utilize a pending sale only for supporting documentation after establishing fair market value using closed sales in conformance with the USPAP guidelines.

---

[10] The Court's determination in this regard is independent of but supported by Donato's testimony.

Notably, although Trustee relies heavily upon the pending sale of 109 Van Tassel Lane, James ultimately conceded that a pending sale is less reliable than a closed sale for purposes of establishing market value for many reasons.

Further, both Stropp and James failed to make adjustments to the comparable properties to account for the Property's known deficiencies. The Court finds this to be a fatal flaw in the development of their valuations. In comparison, Zito considered the cost to cure and factored the same into the Zito Appraisal. While the Court recognizes that the Basloe Report is not independently admissible or admissible for the truth of its contents or any substantive purpose, the Court finds that it was properly considered by Zito in forming his opinion of the market value of the Property. While an expert may not merely repeat the opinion of the other non-testifying experts, Federal Rule of Evidence 703 allows experts to base their opinion on data that other experts in the field would "reasonably rely on." Fed. R. Evid. 703. Here, Zito reviewed the Basloe Report but took a more conservative approach based upon his independent evaluation and determination that certain hardware and materials could be obtained for less money than estimated in the Basloe Report, and he reduced the cost to cure by $17,000.00, for a total cost to cure of $150,000.00, which he then applied to reach a final market value for the Property of $61,000.00. His opinion and valuation are more closely aligned with the record as a whole, including the award of damages to Debtor in the State Court Litigation. The fact that the amount of that award is on appeal does negate the existence of known, significant deficiencies, which unquestionably lessen the Property's value.

*IV. Conclusion*

For the foregoing reasons, the Court concludes that the Zito Appraisal is the most useful and credible of the three presented, notwithstanding that he is a broker rather than a New York

State certified appraiser. He is the only expert to have factored in the cost to cure the known

deficiencies of the Property. Although Stropp and James's selection of comparable properties was

driven by the fact that the duplexes are theoretically identical, they did not account for the fact that

all closed sales were excluded from the State Court Litigation and Trustee did not offer proof that

these comparable properties in fact sold with the same known deficiencies. The Court believes that

a failure to do so results in a substantial error of omission or commission that significantly affects

the valuation results. Accordingly, the Court adopts Zito's market value of $61,000.00 and

concludes that Trustee has not met his burden.

Accordingly, it is hereby

ORDERED, that Trustee's Objection is overruled.

It is SO ORDERED.

Dated: December 20, 2018
      Utica, New York


                                        /s/Diane Davis_____
                                        DIANE DAVIS
                                        United States Bankruptcy Judge